Scott Alan Burroughs (SBN 235718)
scott@donigerlawfirm.com
Andres Navarro (SBN 358499)
anavarro@donigerlawfirm.com
DONIGER / BURROUGHS
603 Rose Avenue
Venice California 90291
Telephone: (310) 590-1820
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Fawn Rogers, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Galerie Marguo, a French business entity; Vanessa Guo, an individual; Jean-Mathieu Martini, an individual; Jean-Mathieu Martini EURL, a French limited liability company; DOES 1-10,<br><br>Defendants. | Case No.:<br><br>COMPLAINT FOR<br><br>1. Breach of Contract<br>2. Fraud<br>3. Violations of 17 U.S.C. 106A<br>4. Conversion<br>5. Trespass to Chattels<br>6. Tortious interference with prospective business relationships<br><br><u>Jury Trial Demanded</u> |

1

COMPLAINT

**INTRODUCTION**

Plaintiff, Fawn Rogers ("Rogers"), by and through her undersigned attorneys, hereby prays to this Honorable Court for relief based on the numerous, egregious, and tortious acts of Defendant Galerie Marguo and its principal, Vanessa Guo. As fully ventilated below, Rogers entered into multiple consignment agreements in good faith entrusting Galerie Marguo with her original artworks and Defendants repeatedly breached those agreements, defrauding Rogers of sales revenues for her works, fraudulently inducing her to enter further agreements, and tortiously interfering with Rogers' other business opportunities, and committing acts which were willful, reckless, or otherwise grossly negligent which ultimately led to the mutilation or destruction of 11 of Rogers' original and internationally recognized  works. Rogers seeks relief as follows:

**JURISDICTION AND VENUE**

1.  This action arises under the Copyright Act of 1976, 17 U.S.C. § 101, et seq.

2.  This Court has federal question jurisdiction under 28 U.S.C. §§ 1331, 1338(a)-(b).

3.  Venue in this judicial district is proper under 28 U.S.C. §§ 1391(c) and 1400(a) because this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred and because the contract at issue contains a choice of law and venue clause for the courts of Los Angeles, California, expressly stating that "any legal proceedings" regarding Roger's work "will be conducted in Los Angeles, CA and will be governed by the laws of the state of California."

**PARTIES**

4.  Rogers is an individual residing in California.

5.  Upon information and belief, Galerie Marguo is a French business entity doing business with this District.

6. Upon information and belief, Vanessa Guo is an individual residing in France and New York who is the owner and operator of Galerie Marguo.

7. Upon information and belief, Jean-Mathieu Martini is an individual residing in France and is a co-owner and operator of Galerie Marguo.

8. Upon information and belief, Jean-Mathieu Martini EURL is a French limited liability company operated by Martini in connection with Galerie Marguo (collectively with Galerie Marguo, "Marguo").

9. Upon information and belief, Defendants DOES 1-10 ("Doe Defendants") are other parties not yet identified, including without limitation the parties responsible for removing and absconding with the artworks at issue without Rogers's consent and consigning them to Marguo's, who have infringed Rogers's copyrights and committed torts against Rogers. The true names, whether corporate, individual, or otherwise, of Doe Defendants are presently unknown to Rogers, which therefore sues said Doe Defendants by such fictitious names and will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

10. Upon information and belief, Rogers alleges that each of the Defendants was the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants, and was at all times acting within the scope of such agency, affiliation, alter-ego relationship, and/or employment; and actively participated in, subsequently ratified, and/or adopted each of the acts or conduct alleged, with full knowledge of each violation of Rogers's rights and the damages to Rogers proximately caused thereby.

## CLAIMS RELATED TO ROGERS' ARTWORK

11. Rogers is a renowned professional multi-media artist whose multidisciplinary work in sculpture, painting, video, and more who is internationally renowned and has been featured in myriad galleries and museums

around the world including in Los Angeles, New York, Hong Kong, Japan, France, Turkey, and more.

12. On information and belief, Galerie Marguo, owned and operated by Vanessa Guo and Jean-Mathieu Martini, is an art gallery that contracts with artists for shows, art fairs, and exhibitions both in its own spaces and internationally with the aim of securing sales of the artworks on consignment and which displays and offers work for sale online.

13. Between 2019 and 2022, Rogers created a series of original paintings on canvas in a series dubbed the "Oyster Series." Prior to the acts complained of herein, the Oyster Series received substantial acclaim and interest from galleries and collectors, leading to Rogers effecting numerous sales of paintings from the Oyster Series.

14. In November of 2022, Guo and Martini contacted Rogers, interested in displaying and exhibiting Rogers' work through Marguo.

15. After Guo and Martini visited Rogers' studio and viewed the Oyster Series, Marguo requested a consignment of all of the remaining 19 paintings of the Oyster Series for Marguo.

16. Rogers agreed, and she and Marguo entered into a written consignment contract through which Rogers would consign the 19 remaining paintings in the Oyster Series to Marguo for a solo exhibition, ("2023Agreement"). A true and correct copy of this agreement is attached as **Exhibit A.** In entering into this contract with Marguo, Rogers was unable to engage in numerous other substantial businesses opportunities, including without limitation those related to the significant interest and inquiries that Rogers received from numerous other, larger galleries who also wished to exhibit the Oyster Series.

17. In connection with the 2023 Agreement, each of the Oyster Series paintings received evaluation for the physical condition upon pick up and/or shipment from Rogers' custody to Marguo's custody. Each of the paintings were

marked "excellent condition" in formal condition reports, with photographs to confirm that each painting was undamaged and untarnished when Rogers conveyed same to the possession and trust of Marguo. Marguo arranged for the Rogers Artworks to be picked up from Rogers' studio and to be securely wrapped and packaged before shipment. All of this ensured that all parties knew the paintings were in excellent condition and undamaged at any time prior to coming into the sole trust and control of Marguo pursuant to the 2023 Agreement.

18. The term of the 2023 Agreement ran until November 15, 2023, and during this time 8 of the 19 Oyster Series Paintings sold.

19. Rogers alleges on information and belief that Marguo sold certain of these paintings for a final price greater than the retail price agreed upon listed in the 2023 Agreement, yet Marguo only accounted to Rogers for 50% of the originally listed price rather than the final sale price as required by the contract.

20. At the end of the consignment period, Rogers demanded that the remaining 11 Oyster Series paintings be returned to her as required, but Marguo requested an extension of the consignment period to continue exhibiting these remaining paintings ("Rogers Artworks"), depicted below:

| Rogers Artwork |
| --- |
|  |

COMPLAINT

***Happy As A Clam #2***, 2021
**Oil on canvas**
**215.9 x 165.1 cm**
**(85 x 65 in)**



***Jestope***, 2022
**Oil on canvas**
**165.1 x 215.9 cm**
**(65 x 85 in)**



***Free of God***, 2021
**Oil on canvas**
**165.1 x 215.9 cm**
**(65 x 85 in)**

COMPLAINT



***Atmorelational*, 2021**
**Oil on canvas**
**215.9 x 165.1 cm**
**(85 x 65 in)**

***Jelly Iceberg*, 2022**
**Oil on canvas**
**165.1 x 215.9 cm**
**(65 x 85 in)**

COMPLAINT



**Speciagua, 2021**
**Oil on canvas**
**165.1 x 215.9 cm**
**(65 x 85 in)**



***The Bee*, 2020**
**Oil on canvas**
**215.9 x 165.1 cm**
**(85 x 65 in)**

COMPLAINT



***Comet Tail #7*, 2022**
**Oil on canvas**
**30.5 x 40.6 cm**
**(12 x 16 in)**
**32.5 x 42.6**



***Comet Tail #3*, 2022**
**Oil on canvas**
**35.6 x 27.9 cm**
**(14 x 11 in)**

COMPLAINT



***Comet Tail #1*, 2022**
**Oil on canvas**
**35.6 x 27.9 cm**
**(14 x 11 in)**



***Comet Tail #9*, 2022**
**Oil on canvas**
**35.6 x 27.9 cm**
**(14 x 11 in)**

COMPLAINT

21. Rogers ultimately agreed to allow Marguo to continue exhibiting the remaining Oyster Series under a new consignment contract with Marguo ("2024 Agreement"), but did so only because Marguo further agreed, first verbally and then confirmed in written communication on WhatsApp, that it would also exhibit the remaining paintings in three art fairs in Shanghai, Seoul, and Kyoto, during the term of the 2024 Agreement ("Art Fair Agreement").

22. The 2024 Agreement provided that Marguo could retain possession of the works until March 15, 2025, after which time Rogers could demand their return. A True and correct copy of the 2024 Agreement is attached hereto as **Exhibit B**. During the term of the 2023 Agreement and 2024 Agreement, the Rogers Artworks were entrusted to Marguo's sole custody and care subject to the terms of the Agreements.

23. The 2024 Agreement also expressly recognized an agreed upon total market value for the Rogers Artworks of $294,000.00.

24. It also expressly confirmed that each of the Rogers Artworks would remain "the property of the Artist until the transfer of title is completed through full payment" via a sale of the work and required that Marguo insure each work "nail to nail" against "all risk of physical loss or damage during the period of consignment."

25. The 2024 Agreement further specified that "Marguo will be responsible for all costs associated with the consignment and exhibition of the work, including without limitation, shipping, customs, handling, packing and crating, installation, de-installation, insurance, storage, and tax."

26. Under the 2024 Agreement, Marguo was also required to provide condition reports on the works before any installation or shipping of those works and "[i]f during the consignment period Galerie Marguo detects any damage to the work it will immediately inform the Artist, which in cooperation with Galerie

Marguo, will decide on the appropriate course of action including the immediate return of the work."

27. In connection with the 2024 Agreement, Vanessa Guo, on behalf of Marguo, confirmed in direct written communication with Rogers that Marguo would be exhibiting the Rogers works in the three aforementioned art fairs in 2024.

28. Over the course of their working relationship while the consignments contracts were active, Rogers suffered numerous issues with Marguo including delayed return of other artworks only to have said artworks noticeably damaged upon their return, and repeated issues of delayed or non-payment for shipping and delivery costs for which Marguo was responsible.

29. Marguo repeatedly and knowingly failed to uphold its duties and obligations under both consignment contracts including by repeatedly failing to provide condition reports on the Rogers Artworks and by attempting to force Rogers to pay for shipping and delivery costs, despite the express language of the parties' contracts, upon Roger's repeated requests for the return of the works, by failing to obtain and maintain the required "nail to nail" insurance for the Rogers Artworks.

30. Marguo further failed to uphold its obligation to exhibit the Rogers Artworks at two of the three art fairs it had agreed to, in violation of the Art Fair Agreement.

31. When the term of the consignment expired, Roger's demanded the return of the Rogers Artworks again, but Marguo refused to comply.

32. Marguo's unlawful withholding of the Rogers Artworks after the end consignment term and despite Roger's repeated demands for their return caused Rogers to lose numerous significant business opportunities, including a substantial contract to have the Rogers Artworks displayed in a film, which Marguo's own attorney intervened in to reject the film deal without Roger's and sales for the

works made through a separate art advisor who could not secure the works for buyers due to Marguo's unlawful conversion of same. Parties with potential business relationships for Rogers contacted Marguo regarding the artworks, yet Marguo continued to unlawfully retain them.

33. In plain violation of the 2024 Agreement's requirement that Marguo be responsible for all shipping and delivery costs, including international shipping, Marguo initially refused to accept responsibility for returning the works and told Rogers she would need to be responsible for retrieving them from storage overseas within an arbitrary and practically impossible eight-day period, while still refusing to provide condition reports for the artworks. During the period Marguo wrongfully retained possession of the works, Rogers lost at least two more sales opportunities in which buyers offered to pay substantial sums for two of the Rogers Artworks.

34. Marguo's representatives also made comments indicating the Rogers Artworks were not being held at the agreed upon storage locations set forth in the consignment contracts and confirmed that Marguo would ship them back to Rogers only after her repeated demands made for months following the expiration of the consignment period. In the process of returning the Rogers Artworks, Marguo rewrapped and repackaged each artwork before shipping them back to Rogers.

35. The Rogers Artworks were finally delivered to Roger's studio in July of 2025, more than four months after the consignment period ended, and, shockingly, in unsalable condition, with the paintings mutilated by, and infested with, visible mold spores. Professional reviews of the condition of the Rogers Artworks concluded that each of these works was up to 95% covered in mold and were damaged beyond use or repair. The crate in which Marguo shipped the works was also infected with mold. The hazardous state of the works led reviewers to wear masks and protective gear to be near the works, and at least one mover involved in

transporting the works fell ill for days following exposure and Rogers herself fell ill after being exposed to the works.

36. Further expert review of the 11 paintings included lab tests, art conservator review, and independent scientific expert review, all of which concluded that the artwork had been irreparable damaged by the excessive and hazardous mold. This also led multiple other professional facilities to refuse to store the Rogers Artworks specifically due to the excessive and hazardous nature of the mold, and the need for Rogers to have find other storage and great expense and the anticipated need to have each of the Rogers Artworks destroyed at further considerable cost to avoid further health risk and storage costs.

37. Rather than take full responsibility for the destruction of Rogers' Artworks while they were in Marguo's sole custody and care, its repeated failure to honor its agreements, and for costing Rogers dozens of thousands of dollars in business opportunities in doing so, Marguo has since filed suit against Rogers in France for defamation based on Rogers speaking truthfully about her numerous issues working with Marguo and the subsequent destruction of her art caused by Marguo, causing Rogers further harm and monetary damage.

38. Rogers further alleges on information and belief that Marguo failed to submit the necessary paperwork to its insurer for months after receiving proof of the extensive mold and damage it caused to the Rogers Artworks and made no effort to have the Rogers Artworks properly inspected. Insurance representatives have since further concluded that damage to the Rogers Artworks occurred while the works were in Marguo's trust and care. And because Marguo rewrapped and repackaged the Rogers Artworks before returning them, Rogers alleges on information and belief that Marguo was fully aware of the extensive mold and damage suffered by the Rogers Artworks yet chose to say nothing in the course of their return.

## FIRST CLAIM FOR RELIEF

**(For Breach of Contract– Against all Defendants, and Each)**

39. Rogers repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs.

40. As set forth above, Rogers and Marguo entered into contracts in the form of the 2023 Agreement and 2024 Agreement, and the Art Fair Agreement to display the works in three art fairs as set forth above.

41. Rogers discharged all of her duties and obligations under the 2023 and 2024 Agreements, and the Art Fair Agreement, including by providing the Rogers Artworks to Marguo for consignment and exhibition.

42. Upon information and belief, Marguo failed to uphold its duties and obligations under the 2023 and 2024 Agreements and Art Fair Agreement and otherwise materially breached same including without limitation by failing to provide the required condition reports on the Rogers Artworks or advise Rogers of the extensive mold damage, failing to return the Rogers Artworks upon Roger's request, failing to exhibit the works in each of the required art fairs, failing to properly make full payments to Rogers for works sold under the agreement, failing to timely pay for costs and fees required of it under the agreements, and failing to acquire the required "nail to nail" insurance coverage for the Rogers Artworks.

43. The aforementioned breaches have resulted in general and special damages to Rogers, including the loss of myriad sales and business opportunities and the destruction and irreparable loss of her renowned artworks, as set forth above, in an amount to be established at trial.

## SECOND CLAIM FOR RELIEF

**(For  Fraud – Against all Defendants, and Each)**

44. Rogers repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs.

45. Leading up to the above-referenced breaches, Marguo made intentionally false representations to Rogers to induce her agreement to provide the Rogers Artworks for extended consignment, including that it would display and exhibit the works in the three aforementioned art fairs, insure the works nail to nail, and that it would cover all costs associated with the consignment including shipping.

46. Marguo knew its representations were false at the time it made them, and Rogers reasonably relied on Marguo's intentional misrepresentations and would not have entered into the Consignment Agreement but for these representations.

47. Thereafter, Marguo failed to display or exhibit the Rogers Artworks in two of the three art fairs it falsely represented to Rogers that it would.

48. Furthermore, Marguo withheld from Rogers that certain of the artworks consigned under the 2023 Agreement sold for more than the agreed upon retail price, and falsely represented to Rogers or otherwise materially withheld information from Rogers that the work had not sold for such a price, and only accounted to Rogers for 50% of the originally agreed upon price rather than the final sale price.

49. As a result, Rogers suffered general and special damages including by Rogers losing well over a hundred thousand dollars of other opportunities for the Rogers Artworks and was unable to consign or exhibit them elsewhere for almost two years. On information and belief, Marguo's acts were willful and wanton, justifying an award, hereby sought, of punitive damages.

## THIRD CLAIM OF RELIEF

**(For Violations of the Visual Artists' Rights Act (17 U.S.C. § 106A) – against all Defendants, and each of them)**

50. Rogers repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs.

COMPLAINT

51. Rogers is the author of each of the Rogers Artworks, which are unique and original works of visual fine art.

52. Rogers owns all rights, title, and interest in and to the Rogers Artworks.

53. On information and belief, Rogers alleges that the Rogers Artworks are fine artworks of recognized public stature by virtue of their international exhibition, recognition, and widespread interest.

54. On information and belief, Defendants, and each of them, altered, distorted, deformed, mutilated, modified, or defaced the Rogers Artworks including by causing them to be wholly destroyed through willfully negligent care in violation of the parties' written contract that resulted in the growth of extensive mold over each of the works such that none can ever be exhibited, displayed, or sold again,  in violation of the Visual Artists' Rights Act, codified at 17 U.S.C. § 106A ("VARA").

55. On information and belief, Rogers alleges that the purpose of VARA is to protect two moral rights of artists—the rights of "integrity" and "attribution" and it allows her to prevent the (1) removal of her attribution information from her work and the (2) alteration, modification, distortion, deformation, and/or mutilation of her work.

56. On information and belief, Rogers alleges that Defendants, and each of them, as alleged herein intentionally committed, or authorized the intentional commission of, the physical defacement, mutilation, alteration, or destruction of the Rogers Artworks in a manner that is severely injurious to Rogers's honor, integrity, and position in the industry.

57. On information and belief Rogers alleges that the aforementioned modifications or alterations to the Rogers Artworks were the result of at least gross and knowing negligence by Marguo, as well as Marguo's consistent failure to abide by the plain terms its contracts with Rogers.

COMPLAINT

58. None of the Rogers Artworks are site-specific and are otherwise removable from whatever location at which they are displayed.

59. On information and belief Rogers alleges that the above acts were committed intentionally, willfully, recklessly, and/or in a grossly negligent manner. Defendants' desecration, distortion, mutilation and destruction of the Rogers Artworks is the actual and proximate cause of injury and prejudice to Rogers's federally protected rights of integrity.

60. Rogers has been damaged by the above acts and seeks actual damages, disgorgeable profits, statutory damages, costs and attorneys' fees in an amount to be set at trial and through post-trial motions.

## FOURTH CLAIM OF RELIEF

**(For Conversion – against all Defendants, and each of them)**

61. Rogers repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs.

62. Rogers is and has been the owner of all rights, title, and interest in and to the Rogers Artworks, including the right to the possession of the works, since the creation of each work and to the present day.

63. On information and belief, Defendants, and each of them, unlawfully interfered with Rogers's rights in and to the Rogers Artworks and otherwise dispossessed her of same by refusing to timely return the artworks in accordance with the Consignment Agreement and by allowing the works to be destroyed by mold by virtue of Marguo's improper handling and storage of the works such that none of them can ever be displayed, sold, or otherwise used again.

64. The above constitutes the unlawful conversion of Rogers's property.

65. As of filing, Rogers has been permanently deprived of her right and ability to enjoy the Rogers Artworks by Defendants' acts of conversion.

66. As a result of Defendants' conversion, Rogers has suffered damages and incurred time and expense in pursuing the converted property and is entitled to the

full fair market value of the Rogers Artworks, plus interest, and compensation for the aforementioned time and expense incurred.

## FIFTH CLAIM OF RELIEF

### (For Trespass to Chattels – against all Defendants, and each of them)

67. Rogers repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs.

68. Rogers is and has been the owner of all rights, title, and interest in and to the Rogers Artworks, including the right to the possession of the works, since the creation of each work and to the present day.

69. On information and belief, Rogers alleges that Marguo's intentional acts in improperly handling and failing to properly care for or display the Rogers Artworks in a manner that directly or proximately caused harm to the Rogers Artwork in the form of the extensive mold and damage done to each.

70. As a result of Marguo's intentional acts, Rogers has suffered damages including, without limitation, the loss of the use her property in the form of the Rogers Artworks.

## SIXTH CLAIM OF RELIEF

### (For Tortious Interference with Prospective Business Relationships – against all Defendants, and each of them)

71. Rogers repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs.

72. Rogers engaged with multiple prospective business relationships following the end of the term for the 2024 Agreement, including a project to include the Rogers Artworks in a film to be produced by Chris Henley and for prospective buyers for the Rogers Artworks at a show put on by art advisor Ornela March.

73. Marguo was aware of these prospective business relationships including without limitation because the team for the film project contacted Marguo directly

about receiving the artworks and because Vanessa Guo communicated with Ornela March and with Rogers about the show.

74. Despite this, Marguo refused to return the Rogers Artworks to Rogers for use in any of these prospective business relationships and thereby knowingly tortiously interfered with same and deprived Rogers of the revenues and benefits she reasonably expected to derive from each.

75. As a result of Marguo's tortious interference, Rogers has suffered damages and lost profits in an amount to be determined at trial.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

a. That judgment be entered in favor of Rogers and against Defendants for each of her claims and for damages in an amount to be determined at trial, including punitive damages, compensatory damages, and pre-judgment interest as permitted under the law;

b. That Rogers be awarded actual or statutory damages resulting from Defendants' violations of her rights under the Visual Artists Rights Act (17 U.S.C. § 106A) as permitted under the Copyright Act;

c. That a constructive trust be entered over any revenues or other proceeds realized by Defendants, and each of them, through their exploitation of the Rogers Artworks;

d. That Rogers be awarded her costs and attorneys' fees to the extent available under the Copyright Act;

e. That Rogers be awarded punitive, statutory, and enhanced damages to the extent available;

f. That Rogers be awarded pre-judgment interest as allowed; and

g. That Rogers be awarded such further relief as this Court finds proper.

///

20

COMPLAINT

## JURY DEMAND

Rogers demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the 7th Amendment to the United States Constitution.

Dated: May 11, 2026                          DONIGER / BURROUGHS


By:   */s/ Scott Alan Burroughs*
      Scott Alan Burroughs, Esq.
      Andres Navarro, Esq.
      *Attorneys for Plaintiff*

COMPLAINT